# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re: Jean Shafer,                                  Case No. 24-30083-jda
                                                     Hon. Joel D. Applebaum
           Debtor.                        Chapter 7
_____/

Samuel D. Sweet, Trustee,

           Plaintiff,
v.                                                   Adv. P. No. 24-03034-jda

Frankenmuth Credit Union,

           Defendant.
_____/

## OPINION AND ORDER GRANTING TRUSTEE'S MOTION
## FOR SUMMARY JUDGMENT

      This matter is before the Court on Plaintiff/Chapter 7 Trustee's Motion for Summary Judgment. Plaintiff's Complaint asserts that a lien held by defendant Frankenmuth Credit Union ("FCU") should be set aside as a preferential transfer pursuant to 11 U.S.C. § 547 of the Bankruptcy Code. For the reasons set forth in this Opinion, the Motion is GRANTED.

# I. STATEMENT OF FACTS

The parties in this case agree on the relevant material facts. Debtor, Jean Schafer, lives in a mobile home in Flint, Michigan. Prior to the fall of 2023, there were two liens on the home. The first lien was held by First Choice MH, LLC ("First Choice"), and the second lien was held by First Bank.

On November 10, 2023, Debtor refinanced the property with Frankenmuth Credit Union ("FCU"). FCU agreed to refinance both liens for a total of $16,142.72. (Plaintiff's Ex. B, FCU's Consumer Lending Plan Advance Receipt and Truth in Lending Statement).[1]

A Mortgage Statement issued by FCU and dated November 17, 2023 indicates that the funds were disbursed by FCU pursuant to a check issued and mailed to the first lien holder, First Choice, on November 13, 2023. (Plaintiff's Ex. C).[2]

On November 13, 2023, Debtor filled out and signed two applications for title on the mobile home ("the Applications"). One of those Applications identified FCU

---

[1] No specific loan documentation was submitted to the Court, but the parties agree that the Consumer Lending Plan accurately includes the terms of the loan as well as language sufficient for a security agreement.

[2] At oral argument, when asked about whether the first lien holder, First Choice, was expected to pay off the second lien holder, First Bank, with funds from that check, counsel for FCU was unsure. She indicated that the status of the second lien was, at that time, unclear. (Dkt. 20, Audio Record of Hearing at 0:9:40).

as the "First Secured Party" and the other identified FCU as the "Second Secured Party." (FCU's Ex. B).

According to FCU, it generally takes between 7 and 10 days for mail sent by FCU to be delivered to a recipient. (FCU's Brief at 2). As that time period elapsed, FCU monitored its internal records to determine whether and when the check sent to First Choice was cashed. The check was not cashed and, at some point, it became clear that the check was lost.[3]

On December 13, 2023, FCU issued a replacement check to First Choice.

The exact date on which First Choice received the replacement check and released its lien is unclear. As explained in FCU's Brief (and again by FCU's counsel at the hearing on this matter), First Choice did not inform FCU when it released its lien. Rather, it sought the release of the second lien (held by First Bank) and then submitted both lien termination statements together to FCU on January 9, 2024. (*See* Ex. 15-1 Affidavit of Kaitlynn Pagel, Member Services Representative for FCU).

---

[3] For reasons unclear to the Court, FCU was in regular contact with *Debtor* regarding the status of the check, notwithstanding the fact that the check was sent, not to Debtor, but to First Choice. *See* FCU's Brief at 2, which indicates that FCU called Debtor on 11/10/23, 11/20/23, 11/21/23, 11/29/23, and 12/12/23. *See also* Debtor's Affidavit to FCU (attached to Plaintiff's Brief) in which Debtor certifies that *she* "lost possession of a cashier's check."

On January 16, 2024, FCU hand-delivered the Applications, which had been signed by Debtor on November 13, 2023, along with the lien termination statements, to the Secretary of State's office for filing.

On January 17, 2024, the Michigan Secretary of State noted FCU's lien on the new title.[4]

On that same day, Debtor filed a voluntary chapter 7 bankruptcy petition. Debtor's schedule B lists the 1996 Palm Harbor Mobile Home, valued at $30,000. Schedule D discloses FCU's lien on the mobile home in the amount of $16,477. Schedule C exempts $12,825 in equity in the mobile home pursuant to the federal wildcard exemption, 11 U.S.C. § 522(d)(5).

On February 16, 2024, a reaffirmation agreement between Debtor and FCU was filed. That agreement reaffirms debt in the amount of $16,555.97 owed to FCU and secured by the mobile home. (Dkt. 12).

On April 9, 2024, Plaintiff filed the present adversary complaint. The complaint seeks to avoid FCU's lien on the mobile home, asserting that FCU originally entered into a loan agreement with Debtor on November 10, 2023, and that pursuant to § 547(e)(2) of the Bankruptcy Code, FCU had 30 days to perfect its

---

[4] While the parties did not provide the Court with a copy of the new title, the parties agreed on the record that the date of the lien on the new title was January 17, 2024.

lien on the title. Because the lien was not noted on the title until January 17, 2024, Plaintiff asserts that the lien constitutes an avoidable preference.

On June 18, 2024, Plaintiff filed the present Motion for Summary Judgment reasserting the allegations set forth in the Complaint.

On July 2, 2024, FCU filed its response to Plaintiff's Motion. The response sets forth two arguments: (1) Plaintiff has failed to establish all of the required elements for a preference and, more specifically, that Plaintiff has failed to proffer evidence that FCU would receive more in a hypothetical chapter 7 liquidation had this transfer not occurred; and (2) this transaction was a contemporaneous exchange pursuant to § 547(c)(1).

On July 31, 2024, a hearing was held on the matter following which the Court took this matter under advisement.

## II. JURISDICTION

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or in a case under Title 11. 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). This matter is also a core proceeding because it arises under title 11.

# III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056 (Rule 56 applies in adversary proceedings). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue of material fact in dispute, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252. The Court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255.

6

# IV. ANALYSIS

A. Elements of a Preferential Transfer Under Section 547(b)

Under § 547 of the Bankruptcy Code, a trustee may avoid certain transfers made to creditors within 90 days prior to the commencement of the bankruptcy case. The elements of a preferential transfer are set forth in § 547(b), which states:

> Except as provided in subsections (c) and (i) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property--
>
> > (1) to or for the benefit of a creditor;
> >
> > (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> >
> > (3) made while the debtor was insolvent;
> >
> > (4) made--
> >
> > > (A) on or within 90 days before the date of the filing of the petition; []
> > >
> > > . . . and
> >
> > (5) that enables such creditor to receive more than such creditor would receive if--
> >
> > > (A) the case were a case under chapter 7 of this title;
> > >
> > > (B) the transfer had not been made; and
> > >
> > > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

7

11 U.S.C. § 547(b).  "All five elements are prerequisites to the finding of a voidable preference."  *Ray v. Security Mutual Finance Corp. (In re Arnett)*, 731 F.2d 358, 360 (6th Cir. 1984).

Here, the parties agree that Debtor transferred an interest in property she owned to creditor FCU (Element 1), and that the transfer was on account of an antecedent debt (Element 2).[5]  The parties did not address Debtor's solvency (Element 3) and, at the hearing on this Motion, Plaintiff indicated that he was relying on § 547(f), which provides that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."  This presumption was not challenged by FCU.  Therefore, two issues remain: (1) was the transfer of the lien by Debtor to FCU made within 90 days of the filing of Debtor's bankruptcy petition (Element 4)[6]; and (2) did the transfer allow FCU to

---

[5] "Antecedent" means "incurred before the transfer in question . . . In the context of a loan, the borrower incurs the debt at the time the lender disburses the loan proceeds."  *Chase Manhattan Mtg. Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 464 (6th Cir. 2008).  Thus, in the instant case, the debt was incurred on either November 13, 2023 or December 13, 2023. In order to construe the facts of this case in the light most favorable to FCU, the Court will assume that the debt was incurred on December 13, 2024, the date FCU issued the replacement check to First Mortgage.

[6] This is an issue because the transfer date is determined by when the lien was perfected.  Section 547(e)(2) provides:
> (2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made--
> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);

8

receive more than it would have received in a hypothetical chapter 7 liquidation had the transfer not taken place.

## B. Perfecting a Security Interest in a Mobile Home under Michigan Law

Under Michigan law, mobile homes are generally considered to be personal property and are subject to the certificate of title provisions found in the Mobile Home Commission Act (MHCA), MCL 125.2301, *et. seq.*[7] Pursuant to the MHCA, a security interest in a mobile home may only be perfected by filing an application with the State of Michigan. The specific procedures for creating a security interest are set forth at MCL 125.2330d. When these procedures are followed and a new certificate of title is issued, a secured creditor's lien is noted on the new title. A secured creditor's lien is perfected as of the date the secured creditor's application

---

(B) at the time such transfer is perfected, if such transfer is perfected after such 30 days; or
(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of--
    (i) the commencement of the case; or
    (ii) 30 days after such transfer takes effect between the transferor and the transferee.

[7] As explained on the Michigan Department of State's website, "[t]he title is identified as a 'Certificate of Manufactured Home Ownership' or 'Certificate of Mobile Home Title.' These documents look like a vehicle title and serve the same purpose."

for the new title is properly submitted to the State.[8] A secured creditor need not wait for termination of prior liens to file an application.[9]

In the case at bar, FCU concedes that the Applications were submitted to the State on January 16, 2024 and the lien was thereafter noted on the title on January 17, 2024.

Pursuant to § 547(e)(2) of the Bankruptcy Code, FCU had a 30-day grace period starting on December 13, 2023 (the date on which it issued the replacement

---

[8] MCLA 125.2330d(3) states:

> Receipt by the department of a properly tendered application for a certificate of title on which a security interest in a mobile home is to be indicated, whether the application is tendered under this act, is a condition of perfection of a security interest in the mobile home and is equivalent to filing a financing statement under the uniform commercial code, 1962 PA 174, MCL 440.1101 to 440.11102, with respect to the mobile home. When a security interest in a mobile home is perfected, it has priority over the rights of a lien creditor, as defined in section 9102 of the uniform commercial code, 1962 PA 174, MCL 440.9102.

> *See also Byron Center State Bank v. Tibble (In re Thrush)*, 388 F.3d 195 (6th Cir. 2004) (security interest in a mobile home may only be perfected by filing an application with the State).

[9] *See* MCLA 125.2330d(1)(d), which states:

> Upon receipt of the certificate of title, application, and the required fee, the department shall issue a new certificate in the form provided in section 30b, setting forth the name and address of each holder of a security interest in the mobile home for which a termination statement has not been filed and the date on which the application first stating the security interest was filed, and mail the certificate to the owner.

check) to perfect its interest in Debtor's mobile home and have that perfected interest deemed to have taken effect on the date on which the funds were transferred. Thirty days from December 13, 2023 gave FCU until January 12, 2024 to submit the Applications to the State and have its lien considered timely perfected for purposes of a preference action. Because FCU did not submit the Applications on or before January 12, 2024, § 547(e)(2)(B) deems perfection to have occurred on January 17, 2024.

The parties agreed that, because Debtor filed her bankruptcy petition on January 17, 2024 and FCU's interest in Debtor's mobile home was perfected on January 17, 2024, Debtor transferred an interest in her mobile home within the 90 day preference period, thereby satisfying preference element 4.

C. The transfer allowed FCU to receive more than it would have received in a hypothetical chapter 7 had the transfer not occurred.

Section 547(b)(5) requires Plaintiff to show that the transfer enables the defendant/creditor to receive more than it would have received if: "(A) the case were a case under Chapter 7 of this title; (B) the transfer had not been made at all; and (C) such creditor received payment of such debt to the extent provided by the provisions of [title 11]." This subsection requires a finding that the transfer enabled the creditor to receive more than it would receive in a hypothetical chapter 7 case in which the transfer had not occurred. FCU asserts that Plaintiff has failed to meet his burden of proof on this element.

In *Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee),* 530 F.3d 458 (6th Cir. 2008), the Sixth Circuit examined § 547(b)(5) from the estate's point of view, looking to see if a transfer diminished the estate. The debtor refinanced his mortgage with the same mortgagee about six months before he filed Chapter 7. About 2 ½ months before the debtor filed, the defendant recorded its new mortgage. Plaintiff filed an adversary complaint to avoid the mortgage as a preferential transfer under § 547(b). The case was before the court on the trustee's motion for summary judgment, which the bankruptcy court granted and the Sixth Circuit affirmed, holding that the trustee must establish a diminution of the estate in order to prevail. *Id*. at 472. As explained by the Sixth Circuit, the late perfection diminished the estate when the unencumbered property became subject to a perfected lien. The "subsequent perfection of the [mortgage] diminished [the debtor]'s estate because the non-exempt equity in the Property that otherwise would have been available for distribution to [the debtor]'s unsecured creditors became encumbered, and unavailable to unsecured creditors, by the [mortgage] that [the defendant] received." *Id.*

FCU asserts that Plaintiff has failed to present any evidence regarding this element of the claim. Because there has been no valuation of the collateral "nor has the Trustee introduced any evidence to establish the value of the Debtor's assets compared to the claims against Debtor's assets," FCU asserts that

we are left with the facts before us. Prior to Creditor's lien position, this collateral was under the perfection of *two* lien holders. Debtor then intended to grant Creditor a security interest in the Mobile Home upon the request to refinance her loan. Had Creditor not agreed to refinance this loan, the collateral would have been encumbered with lienholders, not available for the bankruptcy estate, therefore, no diminution of the estate was caused by this transfer.

FCU Brief at 4.

FCU's argument misses the point in the same way that the creditor in *Chase Manhattan* case missed the point: FCU's subsequent perfection of its lien diminished Debtor's estate because the non-exempt equity in the mobile home that otherwise would have been available for distribution to Debtor's unsecured creditors became encumbered by FCU's lien and, therefore, no longer available to unsecured creditors.

While FCU is correct that Plaintiff did not proffer any specific evidence regarding the value of Debtor's assets, Plaintiff relied on the schedules filed under oath by Debtor, the veracity and accuracy of which have not been challenged. Those schedules indicate that Debtor's case is a no-asset chapter 7, so apart from any non-exempt equity in the mobile home, there are no assets available for distribution to Debtor's unsecured creditors. In a hypothetical chapter 7 case in which the lien transfer to FCU had not been made, Debtor's mobile home would be entirely unencumbered and all of the non-exempt equity would be available for unsecured

creditors. Clearly, granting the lien to FCU improved it position vis a vis the unsecured creditors, and this element of a preference action is satisfied.

D. <u>FCU cannot assert a contemporaneous exchange defense</u>.

Section 547(c)(1) of the Bankruptcy Code provides a defense to a preference action. It states:

The trustee may not avoid under this section a transfer –

(1) To the extent that such transfer was –

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange[.]

11 U.S.C. §547(c)(1).

As explained by the Sixth Circuit in *Ray v. Security Mut. Finance Corp. (In re Arnett)*, 731 F.2d 358 (6th Cir. 1984), "Two elements are crucial to the establishment of the contemporaneous exchange exception: (1) The parties must intend the exchange to be substantially contemporaneous and (2) the exchange must *in fact* be substantially contemporaneous." *Id.* at 362 (emphasis in original). As to the second element, the court held that, in order to be substantially contemporaneous in fact, perfection must take place within the time period set forth in § 547(e)(2), i.e., 10 days under pre-BAPCPA law (extended to 30 days by BAPCPA).

> Section 547(e)(2)(B) explicitly provides that a security interest perfected more than 10 [now 30] days after its creation does not relate back and is deemed to have occurred on the date of perfection. The applicability of section 547(c)(1) to delayed perfection of security interests is thus limited to 10 [now 30] days.

*Id*. at 364. *See also King v. Mortgage Elec. Registration Systems, Inc. (In re King),* 397 B.R. 544, *5-6 (BAP 6th Cir. 2008)(unpublished). Thus, pursuant to Sixth Circuit law, an exchange is contemporaneous only when perfection takes place within the 30-day grace period provided in § 547(e)(2).

With respect to the first element, FCU asserts that both FCU and Debtor *intended* the transaction to be a contemporaneous exchange. The record fully supports this assertion. Debtor signed the Applications recognizing FCU's lien on November 13, 2023, contemporaneous with FCU's issuance of the initial check to First Mortgage. The problem for FCU arises with the second element—that the exchange was *in fact* contemporaneous.

As previously explained, the exchange at issue in the present case is loan proceeds (provided by FCU to pay off the prior lien holders) for a lien on the mobile home (granted by Debtor to FCU). The loan proceeds were transferred, at the latest, when FCU issued the replacement check: December 13, 2023. Thirty days from December 13, 2023 is January 12, 2024. FCU admits that the Applications for new title were not delivered to the Secretary of State until January 17, 2024, five days

*after* the 30 day grace for perfection under the Bankruptcy Code expired. Thus, pursuant to § 547(e)(2)(B), the transfer of Debtor's interest in the mobile home was not timely perfected and cannot be considered contemporaneous.[10]

Because perfection occurred on January 17, 2024, the date on which Debtor filed her bankruptcy petition, the transfer occurred within 90 days of the filing of the petition and is an avoidable preferential transfer.

## ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED.

**Signed on August 9, 2024**

/s/ Joel D. Applebaum
**Joel D. Applebaum**
**United States Bankruptcy Judge**

---

[10] FCU asserts that the exchange was as contemporaneous as it could be because FCU believed that it could not file the Applications with the State until the prior liens had been terminated. FCU cites no legal authority for that assertion and, as noted *supra* at footnote 9, the MHCA does not support it.